# 24-2155

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

BALESTRIERE FARIELLO,

*Plaintiff-Appellant,*

REPLY ALL CORP.,

*Plaintiff,*

-against-

GIMLET MEDIA, INC.,

*Defendant-Appellee.*

## BRIEF FOR PLAINTIFF-APPELLANT
## & SPECIAL APPENDIX

*On Appeal from an Order of the U.S. District
Court for the Eastern District of New York*

BALESTRIERE FARIELLO
225 Broadway, 29th Floor
New York, New York 10007
(212) 374-5421
john.balestriere@balestrierefariello.com
*Attorney for Appellant*

## TABLE OF CONTENTS -- BRIEF

*Page*

TABLE OF AUTHORITIES ........................................................................iii

JURISDICTIONAL STATEMENT ............................................................ 1

PRELIMINARY STATEMENT ................................................................. 2

STATEMENT OF ISSUES PRESENTED ................................................. 6

STATEMENT OF THE CASE .................................................................... 7

STANDARDS OF REVIEW...................................................................... 18

SUMMARY OF THE ARGUMENT ........................................................ 19

ARGUMENT.............................................................................................. 26

    I.    Law Firm Balestriere Fariello Could Not Be Held Liable Under
28 U.S.C. §1927 Because the Same Reasoning Used to Hold
Plaintiff Liable Under 15 U.S.C. § 1117(a) Is Improperly
Applied: By All Appearances Plaintiff's Claims Had Merit, The
Case Was Not "Exceptional" Because Plaintiff's Claim Was Not
Fatally Weak, And Defendant's Own Conduct Showed that the
Action Was Not Frivolous. .................................................................. 26

    A.  No Sanctions Against Plaintiff Should Have Been Awarded,
Because There Was No Extraordinary Misconduct By
Plaintiff For Bringing its Claims Which Were Hard Fought
And Litigated For Years ................................................................ 27

        1.  ReplyAll's Claim Appeared to Have Merit Given Its
First Filed Registration........................................................ 28

        2.  ReplyAll's Allegations of Confusion Did Not Appear
Frivolous .............................................................................. 29

        3.  ReplyAll Appeared to Assert a Reasonable Damages
Theory, Included Evidence of an Intent to Deceive.............. 32

i

B.  Balestriere Fariello's Conduct—Under the Totality Of The Circumstances—Was Not Exceptional Nor Frivolous Sufficient to Justify Sanctions .......................................................... 35

1.  Balestriere Fariello's Conduct Was Not Exceptional Nor Frivolous Where the Defendant Engaged in Active Settlement Discussions — Including While Summary Judgment Was Pending Defendant's Own In House Counsel While Summary Judgment Was Pending, Making a Significant Settlement Offer - and Engaged In Mediation. ......................................................... 38

II.  Balestriere Fariello Could Not Be Held Liable Under §1927 Because Balestriere Fariello Acted in Good Faith In Its Representation of Plaintiff ReplyAll And Had No Intent to Defraud Or Take Advantage of Defendant ............................................ 39

III.  The Court Failed to Provide Rationale for Its Decision To Hold Plaintiff and Appellant Jointly and Severally Liable, Therefore the Award Should Be Vacated ................................................ 41

IV.  The Court Failed to Give Adequate De Novo Consideration to the Objection of the Magistrate Judge's Recommendation in Finding that a Hearing Was Unnecessary to Determine the Appropriate Fee Amount, Therefore, If the Award Is Not Vacated, There Should Be A New Hearing on Respective Fault .......... 42

CONCLUSION ................................................................................. 45

CERTIFICATE OF COMPLIANCE ........................................................ 46

## TABLE OF AUTHORITIES

**CASES:**

*Aguirre v. Best Care Agency, Inc*., 961 F. Supp. 2d 427 (E.D.N.Y. 2013) ................ 33

*Apollo Theater Found., Inc. v. W. Int'l Syndication,* 2-cv-10037, 2005 WL 1041141 (S.D.N.Y. May 5, 2005) ................................................................. 34

*Calloway v. Marvel Entm't Group, Div. of Cadence Indus. Corp.,* 854 F.2d 1452 (2d Cir. 1988).......................................................................... 41, 42

*DJ Direct, Inc. v. Margaliot*, 512 F. Supp. 3d 396 (E.D.N.Y. 2021) ......................... 28

*Eisemann v. Greene*, 204 F.3d 393 (2d Cir. 2000) ..................................................... 40

*George Basch Co. v. Blue Coral, Inc*., 968 F.2d 1532 (2d Cir. 1992) ....................... 32

*Gucci Am., Inc. v. Guess?, Inc.*, 858 F. Supp. 2d 250 (S.D.N.Y. 2012)..................... 34

*Guthrie Healthcare Sys. v. ContextMedia, Inc*., 826 F.3d 27 (2d Cir. 2016) ............. 30

*Hadges v. Yonkers Racing Corp*., 48 F.3d 1320 (2d Cir. 1995) .................................. 35

*Huebner v. Midland Credit Mgmt, Inc*., 897 F.3d 42 (2d Cir. 2018) .......................... 24

*H-W Tech., L.C. v. Overstock.com, Inc*., 2014 U.S. Dist. LEXIS 122667, (N.D. Texas 2014)............................................................................................. 28

*Kali Konangataa v. ABC*, 2017 U.S. Dist. LEXIS 95812 (S.D.N.Y 2017)................ 40

*Kamen v. American Tel. & Tel*. Co., 791 F.2d 1006 (2d Cir. 1986)..................... 35, 36

*Kim v. Kimm,* 844 F3d. 98 (2d Cir. 2018) .................................................................. 24

*Lang v. Retirement Living Publishing Co*., 949 F.2d 576 (2d Cir. 1991)................... 31

*Lazzarino v. Kenton Assocs., Ltd*., 998 F. Supp. 364 (S.D.N.Y. 1998)...................... 43

*Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271 (S.D.N.Y. 1998)........................................................................................... 22

*Life Indus. Corp. v. Ocean Bio- Chem Inc.*, 827 F. Supp. 926 (E.D.N.Y. 1993) ........ 32

*Livingston v. Adirondack Beverage Co*., 141 F.3d 434 (2d Cir. 1998) ...................... 27

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co*., 799 F.2d 867 (2d Cir. 1986) ........................................................................................................ 28

*Nora Bevs., Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114 (2d Cir. 2001) ............... 30

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521 (CADC 1985) ....... 26

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.* 572 U.S. 545 (2014) ......... 20, 26

*Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986).............................................. 36, 40

*OPA Amsterdam BV v. American Inst. of Physics*, 986 F. Supp. 242 (S.D.N.Y. 1997) ..................................................................................................................... 21

*Polaroid Corp. v. Palarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961).............. 21

*Poly-America, L.P. v. API Indus.*, 666 F. Supp. 3d 415 (S.D.NY. 2023).............. 27, 38

*Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124 (2d. Cir. 2023) ............................... 43

*S B ICE, LLC v. MGN, LLC*, No. 08 Civ. 3164(DLC), 2008 WL 4682152 (S.D.N.Y. Oct. 20, 2008) ........................................................................................ 23

*Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999) ............................................................................................................... 18, 28

*Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519 (2d Cir. 2018) ................................................................................................ 18, 19, 20, 26

*Small v. Implant Direct Mfg. LLC,* 2014 U.S. Dist. LEXIS 154468 (S.D.N.Y 2014) ..................................................................................................................... 27

*Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955 (2d Cir 1996) ................. 31

*Star Indus., Inc. v. Bacardi & Co. Ltd*, 412 F.3d 373 (2d Cir. 2005) ......................... 29

*Susino v. Lacy Katzen LLP,* 524 F. Supp. 3d 116 (W.D.N.Y. 2021)........................... 35

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009)........... 29

*Twin Peaks Prods., Inc. v. Publications Intl, Ltd.*, 996 F.2d 1366 (2d Cir. 1993) ...... 26

*Van Leeuwen Ice Cream LLC v. Rebel Creamery LLC*, 2024 U.S. Dist. LEXIS 42646 ................................................................................................................... 22

**STATUTES:**

15 U.S.C. § 1114............................................................................................................ 1

15 U.S.C. § 1114(1) .................................................................................................. 1, 8

15 U.S.C. § 1117 ................................................................................ 1, 4, 6, 16

15 U.S.C. § 1117(a) ..................................................................................... *passim*

15 U.S.C. § 1121 .............................................................................................. 1

15 U.S.C. § 1125 .............................................................................................. 1

15 U.S.C. § 1125(a) ...................................................................................... 1, 8

28 U.S.C. § 1927 ..................................................................................... *passim*

28 U.S.C. § 1331 .............................................................................................. 1

28 U.S.C. § 636(b)(1) ..................................................................................... 42

29 U.S.C. § 794 ............................................................................................... 36

SPECIAL APPENDIX

Memorandum & Order, Hon. William F. Kuntz, II, U.S.M.J. (May 23, 2024) ..... SpA1

Memorandum & Order, Hon. William F. Kuntz, II, U.S.M.J. (Jul. 29, 2024) ..... SpA13
15 U.S.C. § 1117 - U.S. Code - Unannotated Title 15. Commerce and Trade §

1117. Recovery for violation of rights .................................................................. SpA19

§1125. False designations of origin and false descriptions forbidden (a) Civil
action .............................................................................................................. SpA21

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the underlying action (the "Underlying Action") pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b) and 15 U.S.C. § 1121 because the Underlying Action was a civil action arising under the laws of the United States, specifically (i) trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), (ii) false designation of origin under the Lanham Act under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and (iii) reverse confusion Section 32(1) of the Lanham Act, 15 U.S.C. § 1114, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, as well as New York Common Law. Plaintiff ReplyAll commenced the Underlying Action in the Eastern District Court of New York, Brooklyn Division on August 24, 2015.

Jurisdiction over this appeal (the "Appeal") arises pursuant to 28 U.S.C. § 1927 and 15 U.S.C. § 1117. Appellants timely served and filed a Notice of Appeal on August 13, 2024, within thirty days of the July 29, 2024 entry of the order in the Underlying Action (the "Collateral Order").

## **PRELIMINARY STATEMENT**

This Appeal addresses the extent to which a district court may exercise discretion in (i) awarding attorney's fees under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a) and 28 U.S.C. § 1927, and (ii) determining the apportionment on those fees between the parties.

The case originates from a trademark dispute between Plaintiff Reply All Corp. ("ReplyAll" or "Plaintiff") and Defendant Gimlet Media, Inc. ("Gimlet"), now a subsidiary of Spotify Technology S.A. ("Spotify" or "Appellee"). ReplyAll registered the "ReplyAll" trademark in 2013 for an online service enabling content creators to publish conversational content. Two years later, Gimlet launched its podcast entitled "ReplyAll". ReplyAll contacted Gimlet representatives, and the Parties discussed creating a licensing agreement in which Gimlet would cease its use of the @replyall Twitter handle and alter its logo. In December 2014, the Parties went so far as to draft several versions of a licensing agreement. Gimlet refused to agree to the terms Plaintiff required.

On February 13, 2015, Gimlet filed a Trademark/Service Mark Application on the Principal Register. ReplyAll brought suit in the Eastern district court of New York against Gimlet on August 24, 2015, for trademark infringement and false designation of origin. Gimlet did not even move to dismiss ReplyAll's complaint, which had been filed by Appellant's predecessor counsel. Instead, Gimlet engaged

2

in twenty-six months of discovery, including providing forty-nine documents *after* filing its summary judgment motion, without ever petitioning the district court to lift its discovery obligations. Gimlet not only litigated the matter as a standard, non-frivolous, complex commercial litigation, it even engaged in serious settlement discussions throughout the litigation. This included negotiations, as summary judgment was pending, direct negotiations between Balestriere Fariello on behalf of Plaintiff, and in house counsel at Spotify. During the course of litigation, Appellant consulted with multiple experts from respected firms, none of whom raised any concern about frivolity.

In early February 2019, Spotify purchased Gimlet for approximately $200M. In late 2019, ReplyAll and Appellant determined, after consultation with their expert, that the additional information received in discovery gave rise to potential new claims against Spotify. The parties once again sat down to mediate the dispute. Shortly before the mediation, Appellant emailed Gimlet a copy of a draft complaint. After the mediation, the parties agreed to request a re-opening of discovery limited to discovery related to Spotify's acquisition of Gimlet. Appellant served five new subpoenas for depositions, including several directed to non-parties.

After further discovery, Plaintiff alleged that Spotify, Gimlet, and their counsel were involved in the spoliation of documents. Plaintiff moved to compel and Gimlet moved for a protective order and to quash the subpoenas. During the meet

and confer process, Appellant, in letter briefs to the district court seeking production of documents, maintained that the requested documents would allow Plaintiff to develop Plaintiff's damages theories. During summary judgment briefing, the parties again met to discuss settlement. After failed settlement discussions, Plaintiff requested that the Court permit it to file its Second Draft Complaint, including confidential information, which was rejected in an order by the magistrate judge. The Court granted Gimlet's summary judgment motion and motion for attorney's fees pursuant to 15 U.S.C. § 1117 and 28 U.S.C. § 1927.

The district court's decision respectfully suffers from three fundamental errors. First, the district court erred in finding that the action was meritless under the standard of U.S.C. § 1117(a), because Plaintiff's claim was based in law and in fact under theories of likelihood of confusion and actual confusion for their trademark infringement claim in an action which the record easily shows involved many legitimately disputed issues.

Second, the district court erred in holding Appellant Balestriere Fariello liable under 28 U.S.C. § 1927. This was not justified where all evidence shows that Appellant's conduct in reasonably litigating the action, including relying on its clients and outside experts and their views of Plaintiff's claims, does not meet the very high threshold for what is considered "exceptional" as required under the 15 U.S.C. § 1117(a) and applied to 28 U.S.C. § 1927. Indeed, Gimlet's own conduct in

litigating the case—including making significant settlement offers when summary judgment was pending such that no offer of any kind of amount would make sense if the claim was completely without merit —demonstrates that the action was not obviously meritless so as to make a party's lawyer liable.

Third, the district court erred as a matter of law in failing to apportion fault between Plaintiff and Plaintiff-Appellant Balestriere Fariello. A significant portion of the finding of exceptionality was based on a determination that the case was frivolous from the start. The record shows that Appellant took over prosecution of the case after the action began, after Appellee Gimlet had answered (and not moved to dismiss) and after settlement discussions including a mediation had already taken place. The case was referred to the magistrate judge to determine the reasonable fee amount respectively between Plaintiff and Plaintiff's counsel, the Appellant law firm. But Appellant was held jointly and severally liable with insufficient explanation for this decision on apportionment.

This appeal seeks reversal of the district court's decision, advocating for a fair evaluation of merit and proportional responsibility in awarding attorney's fees, if any fees should be awarded.

## STATEMENT OF THE ISSUES PRESENTED

I.     Should a trademark infringement suit for an identical mark be deemed "frivolous" under the "exceptional" standard of §1117(a) of the Lanham Act when the defendant answered, did not move to dismiss or for sanctions, fully participated in discovery (including extensions of time and expert discovery), engaged in mediation and settlement discussions, and remained active through a four-and-a-half-year litigation process up to and beyond the close of discovery and the pendency of a summary judgment motion?

II.    Is the high standard for "bad faith" under §1927 of the Lanham Act applied to attorneys properly met here by a finding of bad faith under §1117 of the Lanham Act against the plaintiff in the action?

III.    Did the district court err by failing to provide rationale for its decision to impose sanction jointly and severally, despite the fact that Appellant, as Plaintiff's counsel, had a good faith basis for believing their clients and experts, and that the adversary's very own litigation conduct demonstrated that Plaintiff's claim had merit?

IV.    Did the district court not give adequate de novo consideration to the objection to the magistrate judge's recommendation in finding that a hearing was unnecessary to determine the appropriate fee amount?

## STATEMENT OF THE CASE

*ReplyAll's Trademark*

On August 27, 2013, ReplyAll registered the trademark "Reply All" for "computer services, namely, creating an on-line community for registered users to form groups and create publicly viewable conversations where group members are the only individuals who can contribute to the conversations." REPLYALL, Registration No. 4391220 (A-442[1]). On February 29, 2012, ReplyAll began using the mark to refer to a technology that allows content creators to easily publish conversational content on the internet, particularly use of the service at replyall.me, which is easily and often embedded on third party publishers' websites (A-92).

ReplyAll's registration was prima facie evidence of the validity and conclusive evidence of ReplyAll's exclusive right to use the Mark in commerce in connection with the designated services (A-92).

*Gimlet Begins Using the ReplyAll Mark and ReplyAll and The Parties Discuss A Potential Licensing Agreement*

On November 6, 2014, Gimlet published its first Reply All podcast episode (Original Complaint, ("Original Complaint"), Aug. 24, 2015, A-39). ReplyAll learned of Gimlet's use of the Infringing Mark in November 2014, after searching for its company name, "Reply All," on Twitter and seeing that Gimlet was using the

---

[1] Citations are to the Appendix of Appellant ("A-")

handle @replyall (ECF Dkt. No. 156-13). Plaintiff contacted Gimlet representatives soon after discovering Gimlet was using a handle that infringed on its Mark.(Id. at 3–4.)

In December of 2014, Gimlet and ReplyAll began negotiating a potential licensing agreement (Certified Tr. of Audio Recording of Parties' Negotiations, Dec. 20, 2019, A-258). Negotiations collapsed and the parties failed to reach a licensing agreement (Original Complaint, A-39). Gimlet then sought to register the trademark REPLY ALL in connection with entertainment services, namely providing podcasts on the subject of the Internet (Gimlet Trademark Application, February 13, 2015, A-262).

Plaintiff ReplyAll commenced suit in the Eastern district court of New York against Defendant Gimlet on August 24, 2015, alleging trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1) and false designation of origin under Section 43(a) of the Lanham Act, 15, U.S.C. §1125(a).

ReplyAll alleged that ReplyAll's well known mark and Gimlet's nascent Infringing mark are confusingly similar, as are their logo types, as used in commerce; compare:

8



and



(Amended Complaint, ("Amended Complaint"), Jul. 25, 2017, A-94 at ¶24).

ReplyAll further alleged that Gimlet's use of the Infringing Mark is likely to be confusing to a substantial number of actual and potential customers, and is likely to cause them to be deceived and to erroneously assume that Gimlet's services are in some way connected with, sponsored by, or affiliated with ReplyAll, all to ReplyAll's detriment. (Amended Complaint, A-94 at ¶25). ReplyAll alleged that the design of ReplyAll's mark, with an arrow on top of another arrow, and Gimlet's Infringing mark, also with an arrow on top of another arrow, is nearly identical, and confusingly similar. The inclusion of the overlapping curved arrows demonstrates

Gimlet's intent to palm off of the good will developed by ReplyAll with its Mark. (Amended Complaint, A-95 at ¶26).

*ReplyAll Alleges Actual Confusion*

ReplyAll alleged actual confusion where "ReplyAll . . . received communications via platforms such as Twitter, Facebook, and LinkedIn indicating users' actual confusion about ReplyAll and the Infringing Mark." (Amended Complaint, A-95 at ¶28); and that "ReplyAll's employees and agents have spent considerable time explaining to confused customers that there is no affiliation between ReplyAll and the podcast produced by Gimlet." (Id). ReplyAll further alleged that "[i]n addition to the harm of having its employees and agents spend time attempting to dispel confusion, there is little chance that these explanations have resolved all of the confusion, even for customers who have contacted ReplyAll." (Id). The following are included as examples:



(Id).

and



(Id.)

ReplyAll alleged that "[a]dditionally, ReplyAll has been victimized by misdirected correspondence and 'tags' from consumers who confuse the Mark with the Infringing Mark. In each case, the misdirected correspondences were a result of confusing the Mark with the Infringing Mark." Examples of this confusion include:



and



(Id. at ¶29).

*Gimlet's Litigation of The Case*

After ReplyAll sued, Gimlet declined to move to dismiss and answered. It also declined to issue a Rule 11 or other letter claiming the action was without merit. Instead, the parties proceeded to discovery and settlement discussions. The parties spent most of 2016 addressing discovery and, while there were discovery disputes as there commonly are, Gimlet never moved for sanctions regarding the merits, even after discovery was closed.

*Court Ordered Mediation*

The Court, on October 17, 2016, directed the parties to mediation, determining that "mediation may assist resolution of this action." (Order re Mediation, Oct. 17, 2016, A-73). The Parties jointly moved for a stay of the action on October 31, 2016 (Joint Motion to Stay Proceedings Pending Mediation, Oct. 31, 2016, A-74). Prior to mediation, the parties jointly moved to lift the stay about a month later, on December 5, 2016, to proceed with litigation. At that time, Gimlet's counsel did make any reference to the supposed frivolity of the claims but, instead, asserted that "their time and efforts would be better spent in completing expert discovery and proceeding to trial." (Joint Motion to Lift Stay, Dec. 05, 2016, A-77). Mediation occurred on March 27, 2017, where the parties were unable to reach a settlement (Joint Status Report, Mar. 29, 2017, A-79).

*Discovery*

The Parties continued to engage in discovery, with Gimlet writing to the magistrate judge, not threatening sanctions on the merits, nor to limit discovery, but instead to seek *more* discovery based on its earlier deposition of ReplyAll's expert, Marc Edelman (Gimlet Media's Status Report, May 03, 2017, A-81).

*ReplyAll Engages Balestriere Fariello*

ReplyAll engaged Appellant Balestriere Fariello in May 2017. After Appellant conducted an initial investigation, Appellant agreed to represent ReplyAll in their litigation and Appellant's substitution was ordered on July 7, 2017 (Notice of Appearance of John G. Balestriere, May 26, 2017, A-86; Stipulation and Order of Substitution of Counsel, Jul. 12, 2017, A-87). At no point did ReplyAll or its principals communicate anything to Appellant that suggested they were acting with any improper motive or any goal other than to seek redress for the serious consumer confusion that had arisen from Gimlet's use of their mark. (Declaration in Opposition to Defendant's Application for Attorneys' Fees, John G. Balestriere, Esq., Sept. 10, 2021, A-415 at ¶ 3). Soon after Appellant was engaged, ReplyAll filed an amended complaint, adding a reverse confusion claim. (Amended Complaint at ¶¶ 47–53.)

*Gimlet and Spotify's Participation in Discovery With Appellant*

Gimlet and Spotify readily participated in discovery, producing over 980 pages of documents and sought additional time for discovery and documents from ReplyAll. In early 2019, while the parties were updating discovery, in advance of trial, news surfaced that Spotify acquired Gimlet. ReplyAll then sought to reopen discovery which Spotify owned Gimlet consented in May 2019. Based on additional discovery, ReplyAll sought another summary judgment briefing to address issues rising during reopened discovery.

*Settlement Discussions Leading Up to Summary Judgment*

Notwithstanding that Gimlet was now owned by one of the world's largest companies that had virtually unlimited legal resources, Spotify did not claim the litigation was without merit or take any other aggressive legal action against Plaintiff ReplyAll. Instead, Appellant and Spotify's lawyers had further settlement discussions. Spotify's settlement posture never betrayed frivolity as Spotify's in-house counsel themselves engaged in in-person and repeated settlement discussions. At one point the discussions reached offers from Spotify included a bracketed settlement discussion with a minimum significant payment to ReplyAll. Such discussions continued until the conclusion of the case. Appellant advised Plaintiff on settlement and even encouraged—but Plaintiff did not want settlement.

On February 12, 2020, the district court granted Appellant's motion for summary judgment, and the order was affirmed by this Court on February 19, 2021.

*Spotify Sought Attorney's Fees*

On March 13, 2020 Spotify moved for attorney's fees. In that motion, Gimlet requested that the Court apportion its fees as follows: 1) ReplyAll was to be exclusively responsible for attorneys' fees incurred from August 24, 2015 to May 25, 2017 when it was represented by prior counsel; 2) Balestriere Fariello was to be exclusively responsible for attorneys' fees related to a threatened state court action; and 3) ReplyAll and the Firm were to be jointly and severally liable for the remaining fees incurred from May 25, 2017 onward (Gimlet's Motion for Attorney's Fees, April 29, 2020, A-287).

After this Court affirmed the district court's summary judgment order, on April 5, 2021, the district court ordered the award for attorneys' fees pursuant to 15 U.S.C. §1117 and 28 U.S.C. §1927, holding, without any reference to any particular conduct by Appellant Balestriere Fariello, that "Plaintiff and the Firm acted in bad faith by proceeding 'with the sole aim of extracting a settlement' and 'by bringing objectively unreasonable and frivolous claims, that 'unduly multiplied the proceedings'". There was only one paragraph of analysis regarding the conduct of Appellant Balestriere Fariello, and nothing more specific than this cited language. The district court referred the case to the magistrate specifically for "a calculation of

the reasonableness and amount of attorneys' fees due to Defendant, from Plaintiff and Plaintiff's counsel, respectively."

Three years later, on March 25, 2024, the magistrate held the Firm jointly and severally liable for attorneys' fees in the amount of $903,036.79.

*Magistrate Judge's Determination on Apportionment*

Soon thereafter ReplyAll went into dissolution, and its principals now reside in Israel. The magistrate found that Plaintiff was "exclusively responsible for attorneys' fees that were incurred while it was represented by prior counsel from August 24, 2015 to May 25, 2017." (Kuo Magistrate Decision re Apportionment, ("Decision on March 25, 2024"), March 25, 2024, A-432).

With no further analysis, and without every conducting a hearing, the magistrate found it was "unable to determine the respective degrees of culpability of Plaintiff and the Firm for Defendant's fees incurred during the Firm's representation of Plaintiff." (Decision on March 25, 2024). In its Decision the magistrate stated, "it is also not possible to correlate the amount of work done by Defendant's Counsel to the decisions made by Plaintiff or Plaintiff's Counsel. To revisit each phase of this lengthy litigation and make credibility findings as between Plaintiff and Plaintiff's Counsel would necessitate a mini-trial." (Decision on March 25, 2024). The magistrate thus simply held counsel and client jointly and severally liable, declining to apportion liability between them. (Decision on March 25, 2024).

The district court affirmed and adopted the magistrate's Decision on May 23, 2024, and, on July 29, 2024 denied Appellant's motion for Reconsideration and Request for Oral Argument which Balestriere Fariello had brought; Balestriere Fariello made the reconsideration motion since it respectfully believed the district court had overlooked the lack of cooperation since 2021 between Plaintiff ReplyAll and Appellant Balestriere Fariello (which had not represented ReplyAll in any way since 2021, at which time ReplyAll entered dissolution) (A-491). Regarding ReplyAll's defunct status, the district court provided that Appellant was barred from raising this in support of its argument at the time of reconsideration.

## STANDARDS OF REVIEW

### Imposition of Attorney's Fee's Pursuant to §1117(a)

The standard of review of a district court's imposition of attorneys' fees pursuant to §1117(a) is subject to review for abuse of discretion. See *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 528 (2d Cir. 2018) (concluding that the district court erred by not sufficiently explaining or justifying the amount of the defendants' attorney's fees awarded under the Lanham Act, where the plaintiff brought ten causes of action and six theories of liability, only the last of which purportedly arose under the Lanham Act).

### Attorney's Fees Sanctions Pursuant to §1927 of the Lanham Act

A district court's imposition of attorney sanctions pursuant to §1927 is subject to review for abuse of discretion. *See Schlaifer Nance & Co., Inc. v. Estate of*

*Warhol*, 194 F.3d 323, 333 (2d Cir. 1999)("Concerns" and "potential problems" identified by plaintiff's attorneys in the negotiation did not amount to unequivocal warnings that would render plaintiff's reliance on a party's representations entirely unreasonable, suggesting the fraud claim retained a colorable basis despite weaknesses and failure on summary judgment).

### *Decision on Apportionment*

A district court's discretionary determination on the amount and apportionment of attorney's fees is subject to review for abuse of discretion. *See Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 532 (2d Cir. 2018).

## <u>SUMMARY OF THE ARGUMENT</u>

The district court made an erroneous determination of fault, by granting Defendant's motion for attorney's fees, but in particular by holding Appellant Balestriere Fariello liable simply for advising and advocating for its client in what by all appearances was an action of merit, with hotly contested issues, and with no reference to sanctions based on frivolity until after summary judgment had been granted. The district court also erred by affirming and adopting the magistrate Judge's decision on apportionment of attorney's fees, holding tiny law firm Appellant and defunct Plaintiff jointly and severally liable for an astonishing near one million dollar award.

Under Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a), a court "may award reasonable attorney's fees to the prevailing party" but only in "exceptional cases." "An exceptional case is simply one that stands out from others with respect to the *substantive strength* of a party's litigating position (considering both the governing law and the facts of the case) or the *unreasonable manner* in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.* 572 U.S. 545, 554 (2014) (emphasis added) (Supreme Court remanded case to district court for further proceedings on whether the case was exceptional where the plaintiff was a bigger company which never commercialized its patent and an email exchange evidence that the infringement action was "a matter of commercial strategy"). Courts are to "evaluate the totality of the circumstances," looking to a "wide variety of factors including frivolousness, motivation, objective unreasonableness (both in factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Sleepy's LLC v. Select Comfort Wholesale Corp.,* 909 F.3d 519, 531 (2d Cir. 2018).

This case was not frivolous: Plaintiff and thus its Appellant counsel, had a reasonable foundation for the legal theories advanced in this action. Plaintiff had a registered trademark, and Plaintiff's claims were based on sufficient factual evidence, even if those facts were ultimately resolved against Plaintiff. Defendants in a Lanham Act action are not entitled to attorney's fees merely because the

plaintiff's claim was unable to survive summary judgment. *See OPA Amsterdam BV v. American Inst. of Physics*, 986 F. Supp. 242, 244 (S.D.N.Y. 1997) (even where plaintiff spent much time and effort seeking to establish matters which the court concluded were irrelevant, and failed totally to show that defendants' methodology was not sufficiently reliable to establish the results reached, the court held it could not say that on balance the suit was so totally devoid of merit as to be brought in bad faith). The absence of a factual issue at the conclusion of discovery is not the same as a case devoid of merit. If that were the case, the number of sanctionable cases would increase enormously, creating a barrier to the Courthouse that the drafters of the Lanham Act could never have intended. Like many other Latham Act claims which fail, this action was not without merit to support the fees order.

Plaintiff had sufficient basis to allege both a likelihood of confusion and actual confusion. Plaintiff reasonably brought its claims where it had evidence of actual confusion and at least some of the Polaroid factors (*See Polaroid Corp. v. Palarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961) weighed in favor of Plaintiff for its likelihood of confusion claim. Plaintiff provided multiple examples of actual confusion, despite the court finding those examples insufficient to establish actual confusion (A-142).

Plaintiff had a sufficiently reasonable basis to allege that it was entitled to all permissible damages, including disgorgement of profits and reasonable royalties.

Under the Lanham Act, a plaintiff in a trademark case can recover its own damages (from, for example, lost profits and injured reputation); its attorneys' fees and costs; and the defendant's profits. *See Van Leeuwen Ice Cream LLC v. Rebel Creamery LLC*, 2024 U.S. Dist. LEXIS 42646, *4. The Supreme Court has explained that as an alternative to damages for its own lost profits, a trademark plaintiff may recover an infringing defendant's illicit gains as an equitable measure of compensation. *Id.* Notwithstanding the district court's finding that Plaintiff failed to establish its own damages, Plaintiff in any case alleged damages recognized under the Lanham act.

Moreover, Plaintiff provided sufficient evidence of trademark confusion and genuine concern about trademark infringement. Plaintiff argued that its mark was strong. "The strength of a mark refers to its distinctiveness, or, more precisely, its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 278 (S.D.N.Y. 1998) (internal quotation marks omitted). Moreover, a decision by the USPTO (as it did for Plaintiff) "to register a mark without requiring proof of secondary meaning affords a rebuttable presumption that the mark is suggestive or arbitrary or fanciful rather than merely descriptive." *Abercrombie & Fitch Co.*, 537 F.2d at 11. Plaintiff argued that ReplyAll's Mark was at least suggestive, affording it the second strongest protection of the four trademark types.

Plaintiff further argued that ReplyAll's and Gimlet's trademarks were very similar, in overlapping fields, and in sufficient competitive proximity to create a likelihood of confusion. "In assessing similarity, courts look to the overall impression created by the logos and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers." *Gruner + Jahr*, 991 F.2d at 1078. Plaintiff asserted that a comparison of the drawings of ReplyAll's and Gimlet's standard character mark show that the trademarks were nearly identical, weighing this factor in favor of Plaintiff (A-168).

Plaintiff's ReplyAll online conversation platform and Defendant's Podcast were in highly related areas of commerce and geographic proximity so that the competitive proximity Polaroid factor weighs in favor of Plaintiff. In assessing this factor, courts look to both market proximity and geographic proximity. *S B ICE, LLC v. MGN, LLC*, No. 08 Civ. 3164(DLC), 2008 WL 4682152, at *2 (S.D.N.Y. Oct. 20, 2008). Plaintiff plausibly asserted - certainly from the perspective of its former counsel Balestriere Fariello - that Plaintiff's and Defendant's respective products were in related areas of commerce (A-182). Plaintiff further argued that Plaintiff's and Defendant's marks also shared a geographic marketplace (A-185). While Plaintiff has a handful of customers abroad, it was an American business primarily doing business with American consumers across the country (A-185). Similarly, Gimlet was an American business primarily doing business with

American consumers (A-185). Both Plaintiff's and Defendant's products were purchased and published online, and were each completely reliant on the Internet for their success (A-185). On balance Balestriere Fariello reasonably believed the suit was not totally devoid of merit nor brought in bad faith.

Sanctions under §1927 should be reversed, because there was a colorable basis for arguments made by Plaintiff, and, thus, its counsel Appellant Balestriere Fariello. As such, the high standard under this statute respectfully was not met. To award attorney's fees against an attorney under §1927, "a court must find clear evidence that (1) the offending party's claim was *entirely* without color, and (2) the claims were brought in *bad faith*—that is, motivated by improper purposes such as harassment or delay". *Kim v. Kimm,* 844 F3d. 98, 106 (2d Cir. 2018) (emphasis added). "A court may infer bad faith when a party undertakes frivolous actions that are *completely* without merit." *Huebner v. Midland Credit Mgmt, Inc*., 897 F.3d 42, 55 (2d Cir. 2018) (emphasis added).

Justifying its finding Appellant liable under 28 U.S.C. §1927, the district court simply referred to the "same reasons" for finding Plaintiff liable under §1117 (A-300). Stating that "Plaintiff's counsel proceeded in bad faith by bringing objectively unreasonable and frivolous claims" and that Appellants attempted to "extort a nuisance settlement from Defendant by advancing unsubstantiated and legally incognizable damages theories". The district court then found that these actions

"unduly multiplied the proceedings and forced Appellant to expend significant resources".

However, Appellant reasonably believed the action had merit when Appellants commenced representation of Plaintiff in the action. Appellant conducted its own investigation of the issues and reasonably relied on Plaintiff's assertion that it had a valid claim (A-444). Moreover, the posture of the case supported Plaintiff's contentions where Gimlet never even moved to dismiss, and where the case proceeded to discovery. Nor did Gimlet ever move for Rule 11 sanctions prior to when Appellant made an appearance in the action, nor later (A-409). The action was not baseless, and much less gave any indication of frivolity at the time Appellant appeared in the matter, a fact that the case failed on summary judgment is not sufficient for finding that Plaintiff's claims were meritless. Nor the even more extreme finding that Plaintiff's counsel should be liable.

The requisite evidence of bad faith under 28 U.S.C. §1927 was not met against Appellant.

## ARGUMENT

I.     **Law Firm Balestriere Fariello Could Not Be Held Liable Under 28 U.S.C. §1927 Because the Same Reasoning Used to Hold Plaintiff Liable Under 15 U.S.C. § 1117(a) Is Improperly Applied: By All Appearances Plaintiff's Claims Had Merit, The Case Was Not "Exceptional" Because Plaintiff's Claim Was Not Fatally Weak, And Defendant's Own Conduct Showed that the Action Was Not Frivolous.**

This case was not exceptional because the facts were sufficient to allow Appellant Balestriere Fariello to reasonably believe that Plaintiff could have established its claims. Under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), a court may award reasonable attorney's fees to the prevailing party only in "exceptional cases." *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530 (2d. Cir 2018). An "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545, 554. "Exceptional", as Congress used the word in section 35 of the Lanham Act, is most reasonably read to mean that the word is generally understood to indicate "uncommon", "not run-of-the-mine." *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest*., 771 F.2d 521, 526 (CADC 1985)(quotation omitted). The Lanham Act allows recovery of reasonable attorney's fees only "on evidence of fraud or bad faith." (See *Twin Peaks Prods., Inc. v. Publications Intl, Ltd.*, 996 F.2d 1366, 1383 (2d Cir. 1993).

Yet, bad faith could not be found against ReplyAll, let alone Appellant Balestriere Fariello, because Appellant reasonably and objectively believed at all times that Plaintiff had a meritorious claim. And both the claims themselves and Defendant-Appellee's conduct supported this reasonable determination by Appellant Balestriere Fariello.

### A. No Sanctions Against Plaintiff Should Have Been Awarded, Because There Was No Extraordinary Misconduct By Plaintiff For Bringing its Claims Which Were Hard Fought And Litigated For Years

The factual support for Plaintiff's claim did not make it impossible for Plaintiff to establish trademark infringement and demonstrates good faith sufficient to prevent liability under Section 1117. An action is "frivolous" when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory. *Livingston v. Adirondack Beverage Co*., 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks omitted). A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint. *Id.* Where a party has set forth some good faith argument in favor of its position, it will generally not be found to have advanced "exceptionally meritless" claims. *Small v. Implant Direct Mfg. LLC,* 2014 U.S. Dist. LEXIS 154468, (S.D.N.Y 2014) *9; see also *Poly-America, L.P. v. API Indu*s., 666 F. Supp. 3d 415, 418 (S.D.NY. 2023)(plaintiff's claims were

grounded in at least plausibly relevant caselaw— thus, they did not lack merit in a way that "stands out" from other claims); *see also H-W Tech., L.C. v. Overstock.com, Inc.*, 2014 U.S. Dist. LEXIS 122667, (N.D. Texas 2014)(holding that where Plaintiff may have asserted a losing argument, it does not amount to the type of extraordinary misconduct reserved for finding a case exceptional.) Like here, a claim that fails as a matter of law is not necessarily lacking any basis at all. *Schlaifer Nance & Co. v. Estate of Warho*l, 194 F.3d 323, 337 (a claim is colorable when it has some legal and factual support, considered in light of reasonable beliefs of the individual making the claim).

### 1. ReplyAll's Claim Appeared to Have Merit Given Its First Filed Registration

ReplyAll established that it was entitled to protection where ReplyAll's earlier registration was prima facie evidence of the validity of ReplyAll's exclusive right to use the Mark in commerce in connection with the designated services. *See DJ Direct, Inc. v. Margaliot*, 512 F. Supp. 3d 396, 408 (E.D.N.Y. 2021) (a certificate of registration is prima facie evidence of the validity of a registered mark); *see also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co*., 799 F.2d 867, 871 (2d Cir. 1986) (registered trademarks are presumed to be distinctive and should be afforded the utmost protection).

28

2. ReplyAll's Allegations of Confusion Did Not Appear
Frivolous

Furthermore, ReplyAll had a colorable basis for asserting both a likelihood of confusion and actual confusion. The district court found that Plaintiff's claim for trademark infringement was meritless because there was neither direct nor reverse consumer confusion pursuant to the Polaroid Factors (which set out an eight-factor test to assess the likelihood of consumer confusion). The factors are:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009). No single factor is determinative as the "application of the Polaroid test is 'not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused.'" Id. (*quoting Star Indus., Inc. v. Bacardi & Co. Ltd*, 412 F.3d 373, 384 (2d Cir. 2005)).

While no single factor is necessarily dispositive, any one factor may prove to be so in certain cases. For example, the "similarity of marks" factor has been found dispositive in some instances, leading to a conclusion on likelihood of confusion

without the need to examine the remaining factors. *See Nora Bevs., Inc. v. Perrier Grp. of Am., Inc*., 269 F.3d 114 (2d Cir. 2001).

The similarity of the marks factor indeed weighed in favor of ReplyAll. Plaintiff's Mark and Appellee's later filed Mark were substantially similar. A person having some familiarity with Plaintiff's Mark, who later casually sees Appellee's mark, as consumers did, without meticulously comparing them side-by-side, would be highly likely to believe she is seeing the familiar logo. *See Guthrie Healthcare Sys. v. ContextMedia, Inc*., 826 F.3d 27, 38 (2d Cir. 2016). Plaintiff's "ReplyAll" logo was presented in light blue font, accompanied by a double arrow logo pointing to the right, and includes underneath it, "conversations as content." (A-42). Appellee's "Reply All" logo was in blue font, included a double arrow logo pointing to the left, with, "A Show About the Internet." (A-42). Indeed, one who studies them side-by-side would observe small differences, however, the differences in the marks are small and lie in relatively insignificant details, rather than in the overall visual impression the marks create upon casual inspection. Thus, this factor alone would have established that Plaintiff's claim was supported both in fact and in law, and, at the very least, was not prosecuted frivolously or in bad faith to warrant any attorney's fees against ReplyAll, or its counsel, the Appellant.

Notwithstanding that the district court found that ReplyAll did not have a basis for a likelihood of confusion, ReplyAll made sufficient allegations of actual

confusion plausibly based on authority. To show actual confusion, a party must demonstrate that the infringer's use "could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation." *Sports Auth., Inc. v. Prime Hospitality Corp*., 89 F.3d 955, 963(quoting *Lang v. Retirement Living Publishing Co*., 949 F.2d 576, 581 (2d Cir. 1991)). Evidence of actual confusion can "involve purchases or prospective purchasers." *Lang v. Ret. Living Pul'g Co*., 949 F. 2d 576, 583 (2d Cir. 1991).Evidence of actual confusion may consist of consumer-survey evidence or anecdotal evidence. WIZKIDS/NECA, 2019 WL 1454666, at * 11. The absence of surveys may be evidence that actual confusion cannot be shown, but something ReplyAll acknowledged it simply could not afford surveys in its litigation against much better resourced Gimlet (which was purchased by Spotify), which, while never moving to dismiss or for sanctions, was nonetheless able to defend itself vigorously for years (A-399). Yet, a trier of fact may still conclude that actual confusion exists in the absence of such evidence, so long as there is other evidence of actual confusion. *Sports Auth., Inc. v. Prime Hospitality Corp*., 89 F.3d 955, 964 (2d Cir 1996). And Appellant Balestriere Fariello certainly believed its client that such confusion existed here when ReplyAll had the first filed Mark which appeared very much like Gimlet's later developed mark.

### 3. ReplyAll Appeared to Assert a Reasonable Damages Theory, Included Evidence of an Intent to Deceive

Furthermore, Plaintiff demonstrated good faith in asserting its damages theories even if it later lost on those theories. Under the Lanham Act, a plaintiff successfully alleging any infringement of a trademark, whether willful or incidental, is entitled to "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a).

Plaintiff presented sufficient evidence of deceptive intent to advance of its disgorgement of profits theory and reasonable royalty damages theory (A-200). To recover profits under this theory, Plaintiff needed to show Gimlet had a deceptive intent in adopting its mark. *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1538 (2d Cir. 1992). As with disgorgement of profits, reasonable royalty damages require deceptive intent. *See Life Indus. Corp. v. Ocean Bio- Chem Inc.*, 827 F. Supp. 926, 932 (E.D.N.Y. 1993) (Wexler, J.) ("Before a plaintiff is entitled to actual damages, he must prove either (1) 'actual consumer confusion or deception resulting from the violation,' or (2) 'that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion.'") (internal citations omitted). In order to satisfy the scienter requirement, the plaintiff must allege either: (1) facts which demonstrate that the defendant had both the motive and a clear opportunity to commit the deception, or (2) facts which show strong circumstantial evidence of conscious behavior or recklessness by the defendants. *See*

*Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 451 (E.D.N.Y. 2013) (intent to defraud is ordinarily a question of fact which cannot be resolved on a motion for summary judgment).

Plaintiff indeed presented facts that Defendant had a clear opportunity and intent to deceive (Plaintiff's Opposition To Defendant's Motion for Summary Judgement, Jan. 26, 2018, A-154). Plaintiff alleged that Defendant's "continuing to use a trademark, without permission or a license from the trademark holder, after an agreement permitting use is terminated is willful infringement." (A-196). Plaintiff further alleged that prior to applying for the Infringing Mark, Defendant not only had knowledge of the existence of Plaintiff's Mark, but also admitted that there was a likelihood of confusion between the ReplyAll Mark and Gimlet's podcast. Thus, Plaintiff presented that the Defendant had the motive and clear opportunity to deceive in his declaration in support of Gimlet's trademark application, where Gimlet President, Matthew Lieber, swore under oath that to the best of his knowledge and belief, no other person has the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion or mistake, or to deceive (Exh. A to Declaration Letter, Heitner to Stella and Welch, Aug. 17, 2016, A-69). Lieber asserted this even after having settlement discussions with ReplyAll, knowing Plaintiff ReplyAll had a mark, leading Balestriere Fariello

to believe that Plaintiff ReplyAll could adequately demonstrate deceptive intent in support of its Lanham Act claim.

Moreover, Plaintiff's claim for royalty damages were supported by precedent which permits reasonable royalty damages even in the absence of a licensing relationship if a reliable basis for calculation exists. Use of a royalty is generally limited to situations where the parties have had a trademark licensing relationship that facilitates computation of the reasonable royalty damages. *See Apollo Theater Found., Inc. v. W. Int'l Syndication,* 2-cv-10037, 2005 WL 1041141, at * 13 (S.D.N.Y. May 5, 2005). Courts in this jurisdiction have recognized that while reasonable royalty damages are inherently difficult to calculate without a prior licensing agreement, they are not entirely precluded. Courts have awarded or approved of reasonable royalty damages if there is a sufficiently reliable basis from which to calculate them. *See Gucci Am., Inc. v. Guess?, Inc.*, 858 F. Supp. 2d 250, 253-54 (S.D.N.Y. 2012)(the court noted that reasonable royalty damages could be awarded even in the absence of a prior licensing agreement, provided that the evidence offers a reliable basis for such calculation). Plaintiff's intent to present expert testimony at trial to substantiate its claim, see (Plaintiff LR56.1 ¶¶ 27, 52.), provides additional support for the reasonableness of its damages claim.

Appellant Balestriere Fariello had ample reason to believe that Plaintiff's claims were based on a reasonable interpretation of trademark law and factual

support, and thus were not objectively baseless. The district court erred in awarding attorney's fees based on findings at summary judgment that Plaintiff could not prove its claims, and, thus, finding that Balestriere Fariello should be liable for any attorney's fees.

## B. Balestriere Fariello's Conduct—Under the Totality Of The Circumstances—Was Not Exceptional Nor Frivolous Sufficient to Justify Sanctions

Appellant Balestriere Fariello reasonably relied on its client's representations about their actions and the basis for their Lanham Act claim, as well as its own assessment of the possibility of ReplyAll prevailing, including seeing that experts were willing to stand behind ReplyAll's assertions. This Circuit has upheld that an attorney may rely on his client's objectively reasonable representations. See *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1330 (2d Cir. 1995)(finding that in light of his familiarity with the litigation and sworn statements of his client and another attorney, an attorney had sufficient evidence to support a belief in plaintiff's statement); *see also Susino v. Lacy Katzen LLP,* 524 F. Supp. 3d 116, 128 (W.D.N.Y. 2021) (although an attorney may not rely entirely on his client's assertions about circumstances of an individual debtor, where an attorney has reason to believe that the client is providing reliable information, some degree of reliance is permissible).

In *Kamen v. American Tel. & Tel.* Co., 791 F.2d 1006 (2d Cir. 1986), the plaintiff sued her employer under the Rehabilitation Act of 1973. Employers are not

liable under the Rehabilitation Act unless they receive "federal financial assistance." 29 U.S.C. § 794. The employer sent letters to the plaintiff's attorney asserting that it did not receive federal financial assistance, but her attorney persisted in prosecuting the Rehabilitation Act suit. The district court agreed with the employer and dismissed the claims. Although plaintiff's attorney had submitted an affirmation stating that his client had advised him that the employer received federal grants, the district court imposed sanctions. The Court of Appeals found that the district court abused its discretion because the attorney's reliance on his client's statements was reasonable. *Kamen*, 791 F.2d at 1007-12. This Court has held that an attorney made a reasonable investigation prior to filing a civil rights suit for an allegedly unconstitutional arrest when he interviewed his client and obtained and reviewed police and court records. *Oliveri v. Thompson,* 803 F.2d at 1276-78 (2d Cir. 1986)(to validly impose a sanction of attorneys' fees a closer analysis was required where the district court spoke in general terms and awarded attorneys' fees against both counsel and plaintiff "for instituting meritless claims and for continuing the prosecution of claims after it became apparent that they were without a factual or legal basis").

To Appellant, ReplyAll's claims of infringement had more than a ring of merit, and the record prior to Appellant's appearance made no betrayal to the veracity of ReplyAll's claims. Appellant, at the beginning of engagement, consulted

36

with ReplyAll's already retained expert, Professor Marc Edelman—whom Gimlet never moved to fully exclude—who expressed confidence in the case and provided consultation to Appellant throughout the action, including, as is appropriate for an expert, theories on damages including amounts of damages.

One of Appellant's first actions in the case was to seek to file an amended complaint in June 2017 (ECF Dkt. No. 65). While Gimlet opposed the amendment, it did so only on grounds of timing, notwithstanding that the litigation had proceeded for years, with most discovery complete, such that, by this time, Gimlet's purported position on the frivolousness of the claims would certainly be established (ECF Dkt. No. 67). Yet, Gimlet did not move against the sufficiency of the complaint. It also did not take this opportunity to suggest to the court that ReplyAll's claims were so lacking in merit as to be frivolous. The district court granted amendment, and Gimlet again answered, raising no new affirmative defenses (ECF Dkt. No. 67). There was no indication from the time of Appellant Balestriere Fariello's appearance in the matter that there was no trademark infringement.

Indeed, ReplyAll's expert, Professor Edelman would later testify at deposition, and state in his report that in his professional opinion ReplyAll was entitled to "an absolute minimum" of $4,096,737 based on information available to him at the time. One of his models reached a damages amount as high as $14,868,917 (ECF Dkt. No. 167-6 at 14, 15, 36). And ReplyAll was in talks with an expert who

had been working on a damages theory of $60 million or more (ReplyAll did not move to include such testimony at trial due to financial issues) (ECF Dkt. No. 156-1 at 1). Gimlet's own actions demonstrated to Appellant that ReplyAll's claims had merit. Gimlet engaged in 26 months of discovery, including providing 49 documents *after* filing its summary judgment motion, without ever petitioning the district court to lift its discovery obligations. The parties also engaged in further depositions of each side's expert witness. (Balestriere Decl. at ¶ 10.) At this time, Appellant held discussions with potential litigation funders from three companies, and experts from two firms, including Charles River Associates and Brattle Group. (Id.) Also at this time, Gimlet's and now Spotify's litigation counsel had again raised settlement. (Balestriere Decl. at ¶ 11.)

Appellant had a reasonable basis for its assessment that the claim had merit based on the posture of the case.

### 1. Balestriere Fariello's Conduct Was Not Exceptional Nor Frivolous Where the Defendant Engaged in Active Settlement Discussions — Including While Summary Judgment Was Pending Defendant's Own In House Counsel While Summary Judgment Was Pending, Making a Significant Settlement Offer - and Engaged In Mediation.

Appellant Settlement conduct on behalf of its client - who had the right to reject Appellant's advice to settle the case - does not stand out from others so as to justify a findings of sanctions. There was no evidence that Plaintiff or Appellant desired to subject Appellant to "extract a nuisance value settlement". *See Poly-*

*America, L.P. v. API Indus.*, 666 F. Supp. 3d 415, 419 (S.D.N.Y. 2023). Gimlet, and later Spotify, themselves engaged in in-person and repeated settlement discussions. (Balestriere 2021 Decl. ¶11). At one point the discussions reached offers from Spotify included a bracketed settlement discussion with a significant payment to ReplyAll. (Balestriere 2021 Decl. ¶ 11). Settlement discussions continued until the conclusion of the case. (Balestriere 2021 Decl. ¶ 11.)

Appellant Balestriere Fariello and ReplyAll engaged in extensive and near-constant discussion in the months leading up to the summary judgment ruling, engaging in more than nine calls and hundreds of emails, where the Appellant lawyers advised its client to consider settlement. In an email to Zach Abramowitz and Ari Gold dated February 2, 2020, Appellant laid out a number of important thoughts on settlement and other issues to resolve this case. (Feb. 2, 2020 Email.) Ten days later, on February 12, 2020, the Court ruled on Gimlet's summary judgment motion, and dismissed this action. (Decision and Order, Feb. 12, 2020, A-269) Gimlet, including later its corporate parent Spotify, acted at all times consistent with the litigation being non-frivolous.

## II.    Balestriere Fariello Could Not Be Held Liable Under §1927 Because Balestriere Fariello Acted in Good Faith In Its Representation of Plaintiff ReplyAll And Had No Intent to Defraud Or Take Advantage of Defendant

There was no bad faith where the reasonableness and propriety of Appellant's litigation tactics were supported by Appellant's reliance on Plaintiff's statements,

Plaintiff's experts statements, and Spotify owned Gimlet's own litigation conduct. An award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power. *Kali Konangataa v. ABC*, 2017 U.S. Dist. LEXIS 95812, (S.D.N.Y 2017) *6 (declining to award attorneys fees under §1927 where the defendant could not demonstrate bad faith). This Court has declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of the lower courts. *See Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)(finding that the district court did not make sufficient specific factual findings to support its conclusion of bad faith where the court's conclusory determination that a motion was filed in bad faith rested entirely on its lack of merit). Furthermore, this Court has also held that courts must not stifle the enthusiasm or chill the creativity that is the very lifeblood of the law. *See Oliveri v. Thompson*, 803 F.2d 1265, 1268 (2d Cir. 1986).

In providing less than a full page of analysis, the district court found that Appellant was liable Under §1927 by "attempting to extort a nuisance settlement from Defendant by advancing unsubstantiated and legally incognizable damages theories". (Order re Attorneys' Fees, Apr. 05, 2021, A-359). As shown throughout this brief and years of the record, Appellant had no bad faith as its damages theories

were supported by Plaintiff's expert testimony. Thus, the district court erred because Appellant did have a good faith basis for its legal strategy as Appellant relied on Plaintiff's expert witness for the amount of damages Plaintiff sought.

**III. The Court Failed to Provide Rationale for Its Decision To Hold Plaintiff and Appellant Jointly and Severally Liable, Therefore the Award Should Be Vacated**

If this Court does not vacate the award with regards to its application to Appellant Balestriere Fariello, at the barest minimum, the magistrate's order assigning joint and several liability to Appellant for Appellee's legal fees should be remanded for further clarification, as it lacks specific findings on the extent to which Appellant's conduct proximately caused those fees. Under *Calloway v. Marvel Entertainment Group*, a court must determine the extent to which each party's conduct is the proximate cause of costs associated with a Rule 11 violation before assigning joint and several liability. When multiple parties are involved, the court should specifically assess each party's responsibility to ensure that any fees assessed are directly attributable to that party's actions. *Calloway v. Marvel Entm't Group, Div. of Cadence Indus. Corp.,* 854 F.2d 1452, 1460 (2d Cir. 1988) (providing that remand is necessary to determine the extent which attorney's conduct is the proximate cause of a rule 11 violation).

The magistrate did not provide a detailed explanation of Appellant's individual responsibility for Appellee's fees, and failed to describe the extent to

which Appellant's conduct was the proximate cause of Appellee's legal fees. Although the magistrate held that Appellant bore responsibility for aspects of litigation, the ruling lacked specific findings regarding how Appellant's actions directly contributed to Appellee's costs. The magistrate acknowledged the absences of a clear correlation provided that "[o]n the record before [], it is also not possible to correlate the amount of work done by Defendant's Counsel to the decisions made by Plaintiff or Plaintiff's Counsel". Id. This failure to establish a causal connection between Appellant's conduct and the legal fees, as provided in *Calloway*, should result in vacatur, or in the alternative remand, to ascertain the specific impact of each party's actions. The award should be vacated due to the lack of specificity and at the very least remanded to determine the extent of Appellant's fault.

**IV.  The Court Failed to Give Adequate De Novo Consideration to the Objection of the Magistrate Judge's Recommendation in Finding that a Hearing Was Unnecessary to Determine the Appropriate Fee Amount, Therefore, If the Award Is Not Vacated, There Should Be A New Hearing on Respective Fault**

The district court erred in holding that the magistrate judge's decision that an evidentiary hearing was not necessary because there was a disputed question of fact regarding liability. Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), a district court is required to make a de novo determination of those portions of the magistrate judge's report to which specific written objections are made. This entails an independent review of all objections and responses to the magistrate's findings and

recommendations. *See CarpetMaster of Latham v. Dupont Flooring Sys.*, 12 F. Supp. 2d 257, 260 .(N.D.N.Y. 1998). A district court must conduct an independent review of the objections and reach its own conclusions. *Id.*

The magistrate judge's recommendation to deny an evidentiary hearing was a critical determination, given that Plaintiff and Plaintiff's counsel were held jointly and severally liable for attorney's fees and the calculation was referred to the magistrate judge. This is especially true because there were disputes regarding the amount of fees (s*ee Lazzarino v. Kenton Assocs., Ltd.*, 998 F. Supp. 364, 367 (S.D.N.Y. 1998)(the court directed the liable parties to reimburse the attorneys' fees and indicated that if there was an issue with the amount, a hearing would be held to determine the proper amount) and regarding material facts concerning liability. (*See Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 137 (2d. Cir. 2023)(a district court need not conduct an evidentiary hearing or hold oral argument on a sanctions motion *when there is no disputed question of fact* or when sanctions are based entirely on an established record).

In its objection to the recommendation, Appellant presented evidence that a hearing was necessary to address factual disputes (A-447). The district court summarily provided that "in making her determination, [the magistrate] had before her a fully briefed record encompassing separate briefs from Defendant, Plaintiff, and the Firm." (A-485). However, Appellant pointed out that there was a factual

dispute between Plaintiff and Appellant as to the role each participated in litigation that resulted in the Defendant's legal fees. Regarding review of the record, the district court held that it was "unlikely that a hearing would have produced a different result" (A-486). However, Appellant invoked its right to independent judicial review. A hearing thus should have conducted so that the parties could have presented their arguments regarding the factual disputes.

## **CONCLUSION**

ReplyAll lost, but that does not mean it should have to pay all of the fees incurred, for years, by its billion dollar adversary Spotify. And such loss under the circumstances here simply did not justify any award of fees against ReplyAll's lawyer, Appellant Balestriere Fariello. The Appellant Firm should not be held liable for a nearly one million dollar award for its zealous representation of Plaintiff in a case that was nowhere near exceptional.

For all the foregoing reasons, the Decision and Order respectfully should be reversed, and the Action should be remanded for trial.

Dated: New York, New York
     January 30, 2025

Respectfully submitted,

By: <u>/ s / John G. Balestriere</u>
John G. Balestriere
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone: (212) 374-5401
john.balestriere@balestrierefariello.com

*Attorneys for Plaintiff-Appellant Balestriere
Fariello*

45

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Local Rule 32.1(a)(4)(A) because this brief contains **9,418 words**, not including those items excluded under Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Book Antiqua style.

## CERTIFICATE OF SERVICE

I hereby certify that one ( 1) copy of the following:

APPELLANT'S BRIEF AND SPECIAL APPENDIX
AND APPENDIX ON APPEAL

was served upon Appellee's counsel via the Court's ECF System, as indicated, this 390th day of January, 2025, upon the following:

Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210

Date: January 30, 2025

*/ s / John G. Balestriere*
_____

JOHN G. BALESTRIERE
*Attorney for Appellant*

# SPECIAL APPENDIX

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
REPLY ALL CORP.,                    :
                                           :
             Plaintiff,            :
                                           :
           v.                       :          **MEMORANDUM & ORDER**
                                           :          15-CV-4950 (WFK) (PK)
GIMLET MEDIA, INC.,              :
                                           :
           Defendant.         :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

In this trademark dispute, on April 5, 2021, the Court granted Gimlet Media, Inc.'s ("Defendant's") motion to recover attorney's fees and costs from Reply All Corp. ("Plaintiff") and Plaintiff's counsel, Balestriere PLLC (d/b/a Balestriere Fariello) ("Plaintiff's Counsel" or "the Firm"), holding, *inter alia*, Plaintiff and the Firm acted in bad faith. ECF No. 199 at 4, 8. The Court referred the case to the Honorable Magistrate Judge Peggy Kuo for a calculation of the reasonableness and amount of fees due to Defendants from Plaintiff and the Firm, respectively. *Id.* at 9. On March 25, 2024, Judge Kuo awarded Defendant $1,071,981.00 in fees allocated between Plaintiff and the Firm, and $13,585 in costs. ECF No. 232. Judge Kuo ordered Plaintiff solely responsible for attorney's fees in the amount of $168,944.21, and Plaintiff and the Firm jointly and severally liable for the remaining attorney's fees in the amount of $903,036.79. *Id.* On April 8, 2024, the Firm timely filed its objections to Judge Kuo's decision. ECF No. 233. For the following reasons, the Court OVERRULES the Firm's objections, and AFFIRMS and ADOPTS Judge Kuo's decision in its entirety.

## BACKGROUND

Reply All Corp. ("Plaintiff") filed a trademark suit against Gimlet Media, Inc.

("Defendant") on August 24, 2015. ECF No. 1. On February 12, 2020, the Court granted

Defendant's motion for summary judgment in its entirety and dismissed Plaintiff's Amended

Complaint. ECF No. 181. The Second Circuit affirmed this decision on February 19, 2021. ECF

No. 197. On April 5, 2021, the Court granted Defendant's motion to recover attorney's fees and

costs from Plaintiff and Plaintiff's counsel, Balestriere PLLC (d/b/a Balestriere Fariello)

("Plaintiff's Counsel" or "the Firm"), pursuant to 15 U.S.C. § 1117 and 28 U.S.C. § 1927. ECF

1

SpA1

No. 199.  The Court held, *inter alia*, Plaintiff and the Firm acted in bad faith by proceeding "with the sole aim of extracting a settlement" and "by bringing objectively unreasonable and frivolous claims" that "unduly multiplied the proceedings." *Id.* at 4, 8.  The Court then referred the case to the Honorable Magistrate Judge Peggy Kuo for a calculation of the reasonableness and amount of fees due to Defendants from Plaintiff and the Firm, respectively. *Id.* at 9.

On March 25, 2024, Judge Kuo reduced the award Defendant sought from $1,575,819.00 to $1,071,981.00 in fees allocated between Plaintiff and the Firm, and $13,585 in costs.  ECF No. 232 at 3, 13.  As for apportionment, Judge Kuo ordered Plaintiff solely responsible for attorney's fees in the amount of $168,944.21, and Plaintiff and the Firm jointly and severally liable for the remaining attorney's fees in the amount of $903,036.79. *Id.* at 13.  On April 8, 2024, the Firm timely filed its objections to Judge Kuo's decision.  ECF No. 233.[1]  On April 22, 2024, Plaintiff and Defendant each filed responses in opposition to the Firm's objections.  ECF Nos. 235, 236.  The Court permitted the Firm to file a reply to the responses by Plaintiff and Defendant, which the Firm did on May 6, 2024.  ECF No. 239.

## DISCUSSION

### I.      Standard of Review

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  Parties must serve and file any written objections to the magistrate judge's decision within fourteen days of being served with a copy of such proposed findings and recommendations. *Id.*  A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*  Objections must be "specific and are to

---

[1] The Firm also filed a sealed, unredacted version of its objections on April 9, 2024. *See* ECF No. 234.

SpA2

address only those portions of the proposed findings to which the party objects." *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (Owen, J.) (internal quotation marks and citation omitted). "Where 'the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report and recommendation strictly for clear error.'" *Norman v. Metro. Transp. Auth.*, 13-CV-1183, 2014 WL 4628848, at *1 (E.D.N.Y. Sept. 15, 2014) (Matsumoto, J.) (quoting *Zaretsky v. Maxi-Aids, Inc.,* 10-CV-3771, 2012 WL 2345181, at *1 (E.D.N.Y. June 18, 2012) (Feuerstein, J.)).

## II.   Analysis

### A. Apportionment

The Firm objects to Judge Kuo's holding that Plaintiff and the Firm are jointly and severally liable for attorney's fees. ECF No. 233 at 18. The Court agrees with Judge Kuo.

#### i.   Bad Faith

In its objection, the Firm argues Judge Kuo's determination was "not appropriate" because she improperly relied on the decision in *Viola Sportswear, Inc. v. Mimun*, 574 F. Supp. 619, 621 (E.D.N.Y. 1983) (Glasser, J.). ECF No. 233 at 18. In particular, the Firm argues *Viola Sportswear* should not govern because "[t]he counsel in *Viola* may have clearly acted in bad faith, but the record shows that [the Firm] clearly acted in good faith." *Id.* at 19. In its reply, the Firm again raises the issue, arguing "[t]here is ample evidence of the Firm's good faith." ECF No. 239 at 10. However, the Court, in its decision to award attorney's fees, already found "Plaintiff's counsel proceeded in bad faith by bringing objectively unreasonable and frivolous claims." ECF No. 199 at 8. In reaching its finding of bad faith on the part of the Firm, the Court also noted the Firm's attempt to "extort a nuisance settlement from Defendant by advancing

3

SpA3

unsubstantiated and legally incognizable damages theories" that "unduly multiplied the proceedings and forced [Defendant] to expend significant resources." *Id.*

Furthermore, Judge Kuo's citation to *Viola Sportswear* is appropriate because, in that case, Judge I. Leo Glasser found the conduct of plaintiff and its counsel during litigation served to "multiply proceedings unreasonably and vexatiously," particularly noting that plaintiff counsel's arguments "can hardly be said to be well grounded in fact and can appropriately be characterized as a charge that is frivolous." 574. F Supp. at 621. The Court disagrees with the Firm's claim that their actions "here are completely different" than that of plaintiff's counsel in *Viola Sportswear*. ECF No. 233 at 19. While the exact form of vexatious tactics may differ between plaintiff's counsel in *Viola Sportswear* and the Firm, both parties proceeded in bad faith. As in *Viola Sportswear*, such conduct here justifies a finding of joint and several liability.

Moreover, as Judge Kuo noted: "On May 11, 2021, Plaintiff filed a letter notifying the Court that '[n]either Reply All Corp. nor its counsel intends to move for reconsideration' of the Court's Decision and Order on Defendant's motion for attorneys' fees." ECF No. 232 at 2 (quoting ECF No. 203). The Firm had an opportunity to move for reconsideration and chose not to do so. *See* ECF No. 202 (granting the Firm's request for an extension of time to file motion for reconsideration); ECF No. 203 (writing the Firm and Plaintiff no longer intended to move for reconsideration). The Court rejects the Firm's attempt to use its objections and reply to Judge Kuo's decision as a back-door to reconsider the Court's bad faith holding. *See Russ. Sch. of Mathematics, Inc. v. Sinyavin*, 23-CV-08103, 2024 WL 292277, at *2 n.1 (S.D.N.Y. Jan. 25, 2024) (Halpern, J.).

4

SpA4

ii.    *Indivisibility of harm*

In arguing against joint and several liability, the Firm also states "the harm is divisible."

ECF No. 233 at 19.  According to the Firm, it "can only be liable for conduct that aggravated the

amount of fees accrued by Gimlet, because that is an amount that may be determined" and that it

"did not aggravate the litigation beyond the litigation and settlement strategy which ReplyAll

dictated and, since the Firm thought the claims had merit, the Firm was obligated to follow." *Id.*

at 20.  The Court disagrees with the Firm and holds Judge Kuo's decision struck the appropriate

balance in ordering the Firm jointly and severally liable for $903,036.79 in attorney's fees.

The Firm is correct that, under state law, "members of a corporation could not be held

jointly liable for the entire damages where the court was able to determine the proportions in

which the defendants profited from seizure of a corporation's shares." *Id.* at 19 (citing *Bonanni

v. Horizons Invs. Corp.*, 179 A.D.3d 995 (2d Dep't 2020).  Although not bound by the state court

decision in *Bonanni*, the Court finds the case illustrative.  In *Bonanni*, the Second Department,

Appellate Division agreed with the lower court's "determination to divide the defendants'

liability . . . in proportion to their shares in [the company]." *Bonanni*, 179 A.D.3d at 1003.  In

contrast, in the instant case, there is no clear divisible economic gain or interest by which Judge

Kuo (or any judge) could rely on to divide liability proportionally between Plaintiff and the Firm.

To state the obvious, Plaintiff and the Firm are not co-owners with respective shares of a

corporate entity involved in the litigation, as was the case in *Bonanni*.

The Court agrees with Judge Kuo's decision to hold Plaintiff "exclusively responsible for

attorneys' fees that were incurred while it was represented by prior counsel."  ECF No. 232 at

11.  However, once Plaintiff engaged the Firm for legal services, the harm became indivisible

between Plaintiff and the Firm.  As the *Bonanni* court noted, "when two or more tortfeasors act

SpA5

concurrently or in concert to produce a single injury, they may be held jointly and severally liable." *Bonanni*, 179 A.D.3d at 1002 (internal citation and quotation marks omitted). Both Plaintiff and the Firm played significant and intermingled roles in vexatiously propelling forward the litigation and unduly multiplying the proceedings. As Judge Kuo noted, "Plaintiff further asserts that the Firm threatened to bring a new lawsuit against Defendant's parent corporation, Spotify, counseled Plaintiff to manufacture a shareholder derivative lawsuit, and amended the complaint to add new claims and theories. [Plaintiff] argues that much of this behavior was driven by the Firm's fee arrangement with Plaintiff, which entitled the Firm to greater fees if a new suit was filed and tried." ECF No. 232 at 12.[2] On the other hand, "[t]he Firm asserts that it properly advised Plaintiff throughout the case and encouraged Plaintiff to settle to avoid the risks of trial." *Id.* Neither Plaintiff nor the Firm can escape responsibility.

The Court agrees with Judge Kuo: "Despite the extensive finger-pointing and mutual accusations, [the Court is] unable to determine the respective degrees of culpability of Plaintiff and the Firm for Defendant's fees incurred during the Firm's representation of Plaintiff." *Id.* at 13. Moreover, as Judge Kuo wrote, "it is also not possible to correlate the amount of work done by Defendant's Counsel to the decisions made by Plaintiff or Plaintiff's Counsel." *Id.* Therefore, holding Plaintiff and the Firm jointly and severally liable is necessary to avoid the "exercise of examining nesting dolls of litigation," particularly where both Plaintiff and the Firm played significant concurrent roles in aggravating the litigation to a vexatious terminus. *Id.*

---

[2] The Court previously found the Firm's actions "unduly multiplied the proceedings and forced Gimlet to expend significant resources, for example, by: hiring its own damages experts to rebut Plaintiff's baseless claims, . . . filing two summary judgment motions regarding damages, . . . filing a *Daubert* motion to preclude the testimony of Plaintiff's expert relating to the reasonable royalties, . . . and filing a motion in *limine* to exclude damage contentions and related evidence not disclosed during discovery or the Pretrial Order." ECF 199 at 8.

SpA6

The Firm also argues Judge Kuo failed to take into account the ability of the firm to pay, which it argues is relevant under 28 U.S.C. § 1927. ECF No. 233 at 24. However, as the Firm points out, "Courts have in their discretion in choosing whether to apportion costs and fees across parties based on factors, such as the percentage of settlement paid by each party or the ability of parties to pay." *Id.* (citing *Soler v. G & U, Inc.*, 801 F. Supp. 1056, 1067 (S.D.N.Y. 1992) (Tenney, J.)). Judge Kuo was within her discretion to award this amount, and the Firm will have an ability to make arguments about its financial position in its discussions with Plaintiff about apportionment.

### B.  Award Amount

In its reply, the Firm argues the amount awarded by Judge Kuo is too high in terms of supposed procedural requirements and in comparison to amounts awarded in other cases. The Firm argues Judge Kuo's decision amounts to a "punitive sanction" warranting "procedural protections appropriate to a criminal case." ECF No. 239 at 7 (citing *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 285 (2d Cir. 2021)). The Firm's citation to *Liebowitz* undermines its own argument because the Second Circuit in *Liebowitz* affirmed the district court's imposition of sanctions and attorney's fees "[g]iven [counsel's] serious and repeated misconduct." *Liebowitz*, 6 F.4th at 293 (rejecting the law firm's argument that the court impermissibly failed to afford the protections of criminal procedure for its punitive sanctions). Moreover, the Firm's citation to *Liebowitz* is unpersuasive because, unlike in *Liebowitz*, the Court in the instant case did *not* impose on the Firm punitive sanctions in excess of attorney's fees and costs.

The Firm continues in its reply by citing cases which supposedly indicate courts do not impose awards in the amount at issue here. ECF No. 239 at 7-8. The Firm misconstrues the

7

SpA7

determination of attorney's fees and costs.  There is no arbitrary upper limit.  Rather, "[the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010)).

Judge Kuo correctly applied the lodestar method, as done so by courts in the cases cited by the Firm.  In *Alcon Vision, LLC v. Lens.com*—the case cited by the Firm with the highest award at $227,065.10—the court found reasonable 639.62 hours at a blended $355 hourly rate for all attorney and paralegal work.  *Alcon Vision, LLC v. Lens.com, Inc.*, 18-CV-407, 2023 WL 8072507, at *9 (E.D.N.Y. Nov. 21, 2023) (Gershon, J.); *see also* ECF No. 239 at 7.  In the instant case, Judge Kuo found 3,089.28 hours reasonable at hourly rates of $600 for partners, $400 for senior associates, $300 for junior associates and $100 for paralegals.  ECF No. 232 at 6, 10.  The Court finds the rates between *Alcon Vision* and the instant case are within an acceptably similar range, with the award difference largely explained by the difference in hours:  the hours in the instant case are nearly five times greater than those in *Alcon Vision*.  Moreover, Judge Kuo's finding on hours is reasonable given it covers a period of active "litigation last[ing] nearly six years." ECF 232 at 7.  The significant difference in hours is evident across the other cases cited by the Firm as well.  *See, e.g., Ke v. J R Sushi 2 Inc.*, 19-CV-7332, 2024 WL 1891195, at *7 (S.D.N.Y. Apr. 30, 2024) (Moses, Mag.) (finding reasonable 88.9 hours for a total award of $26,152.50); *Rasmy v. Marriott Int'l, Inc.*, 16-CV-4865, 2024 WL 1676357, at *3 (S.D.N.Y. Apr. 18, 2024) (Rakoff, J.) (finding reasonable 174.4 hours for trial preparation and 25 hours for motion litigation for a total award of $79,832.10).

SpA8

Judge Kuo not only correctly applied the lodestar method, but also reduced the award amount requested by Defendant by nearly half a million dollars. *Compare* ECF No. 232 at 3 ("Defendant seeks an award . . . in the amount of $1,575,819.00.") *with id.* at 13 ("Defendant is awarded . . . a total award of $1,085,566.00"). Judge Kuo did so by rejecting defense counsel's higher out-of-district rates and reducing the number of compensable hours due to defense counsel's use of block billing over large amounts of time. *Id.* at 6, 9-10. And, as previously noted, Judge Kuo also excused the Firm from payment of any "fees that Defendant accrued before the Firm began representing Plaintiff," which accounted for 15.76% of the total fees. *Id.* at 11. Therefore, the Court finds Judge Kuo correctly calculated the reasonable amount of attorney's fees and costs.

### C. Hearing

The Firm objects to Judge Kuo's decision not to hold an evidentiary hearing following the parties' full briefing on the issue of attorney's fees and costs. ECF No. 233 at 21. The Court agrees with Judge Kuo's decision and finds such a hearing unnecessary.

As the Firm notes, pursuant to 28 U.S.C. § 636(b), a district court "*may* [] designate a magistrate judge to conduct hearings, including evidentiary hearings." *See* ECF No. 233 at 21 (emphasis added). Nonetheless, this Court did not designate Judge Kuo to conduct such a hearing. Instead, the Court "refer[red] this case to the Honorable Magistrate Judge Peggy Kuo for a calculation of the reasonableness and amount of fees due to Defendants, from Plaintiff and Plaintiff's counsel, respectively." ECF No. 199 at 9. Such a calculation does not require a hearing.

In the cases cited by the Firm, ECF No. 233 at 21-22, the court ordered the magistrate judge to either hold a hearing or do so if requested by defendant's counsel, *see Indep. Living*

9



*Aids, Inc. v. Maxi-Aids, Inc.*, 208 F. Supp. 2d 387, 393-94 (E.D.N.Y. 2002) (Spatt, J.) (ordering the magistrate judge "to hold a hearing on the issue"); *Alkoff v. Gold*, 702 F. Supp. 429, 432 (1988) (Owen, J.) (ordering, "[i]f requested by defendant's counsel, a hearing will be held"); *Viti v. Guardian Life Ins. Co. of America*, 817 F. Supp. 214, 218 (E.D.N.Y. 2011) (McMahon, J.) (ordering "[t]he matter is referred to The Hon. Michael A. Dolinger, U.S.M.J., for a hearing"). The Court included no such directions in its order referring the case to Judge Kuo.

Moreover, "[w]hen making a fee award, the Court may evaluate the record to determine the appropriate fee amount; it need not hold an evidentiary hearing on the issue." *Greenidge v. Mundo Shipping Corp.*, 60 F. Supp. 2d 10, 13 (E.D.N.Y. 1999) (Block, J.) (citing *Walz v. Town of Smithtown*, 46 F.3d 162, 170 (2d Cir. 1995); *see also Banus v. Citigroup Glob. Mkts., Inc.*, 757 F. Supp. 2d 394, 400 (S.D.N.Y. 2010) (Kaplan, J.) ("The opportunity to be heard does not require a full evidentiary hearing, and being afforded the opportunity to respond by brief or oral argument may be sufficient.") (citing *In re 60 East 80th Street Equities, Inc.*, 218 F.3d 109, 117 (2d Cir. 2000)).

In making her determination, Judge Kuo had before her a fully briefed record encompassing separate briefs from Defendant, Plaintiff, and the Firm. *See* ECF Nos. 210, 215, 226. Relevant to the Firm's objections, this included Plaintiff's 21-page memorandum of law filed with two declarations by its founders and 10 exhibits, ECF Nos. 215, 215-1 – 215-12, and the Firm's 20-page memorandum of law filed with a declaration from the partner on the case, ECF Nos. 226, 226-1, and one exhibit, ECF No. 214-2. The Firm was also permitted to file a sur-reply after it stated "the Firm did not otherwise have an opportunity to complete the factual record in response to these allegations" because Plaintiff and the Firm "simultaneously submitted their oppositions." ECF No. 220 at 1.

SpA10

Based on the comprehensive record before her, Judge Kuo was able to sufficiently calculate the reasonableness and amount of attorney's fees and costs due, including holding Plaintiff and the Firm jointly and severally liable. The Court finds it highly unlikely that a hearing would have produced a different result. Furthermore, a hearing would have unnecessarily prolonged this trademark dispute, which the parties began litigating almost nine years ago and in which the Court granted summary judgment over four years ago. *See also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation."). In its objections, the Firm stated it intended to use a hearing before Judge Kuo to address liability and "examine the Firm's good faith." ECF No. 233 at 23. As previously discussed, the Firm's bad faith conduct is a settled issue. Therefore, a hearing would have enabled the Firm's pattern of unduly multiplying the proceedings.

The Firm is misguided in its claim that the lack of a hearing "effectively prevented the Firm from having the opportunities afforded to parties under [the Federal Rules of Civil Procedure] Rule 11's safe harbor provision by waiting until the case was completely over to pursue 28 U.S.C. § 1927 sanctions." ECF No. 239 at 11. Rule 11 and § 1927 each have a "remarkably different history" with their own distinct purposes and analyses. *U.S. v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1343 (2d Cir. 1991). As the Second Circuit noted, "Rule 11 may not be employed to sanction obnoxious *conduct* during the course of the litigation; whereas § 1927 applies to the unreasonable and vexatious multiplication of court proceedings." *Id.* at 1346. Rule 11 would not have fully captured the Firm's cumulative conduct over the course of the litigation. The Firm, along with Plaintiff and Defendant, each had an opportunity to brief their arguments to Judge Kuo—and did so—regarding years of litigation conduct without the need for further unnecessary delay occasioned by a hearing.

SpA11

In its reply, the Firm states the lack of a hearing and Judge Kuo's decision could "cause a

chilling effect on counseling which lawyers provide to their clients." ECF No. 239 at 13. If the

Court's affirmance of Judge Kuo's decision has the effect of chilling unreasonable and vexatious

counseling, then so be it. Pursuant to 15 U.S.C. § 1117 and 28 U.S.C. § 1927, the Court will

have done its job to not only compensate Defendant for reasonable attorney's fees and costs

incurred because of the conduct by Plaintiff and the Firm, but also to "deter future misbehavior,

protect other litigants, and maintain the integrity of the judicial system." *Liebowitz v. Bandshell

Artist Mgmt.*, 6 F.4th 267, 285 (2d Cir. 2021).

## CONCLUSION

Upon a careful review of Judge Kuo's decision and the Firm's objections filed thereto,

and for the foregoing reasons, the Court finds no error in Judge Kuo's decision. Accordingly,

the Court AFFIRMS and ADOPTS Judge Kuo's decision in its entirety, ECF No. 232, and

OVERRULES the Firm's objections, ECF Nos. 233, 234, 239. As Judge Kuo held, Defendant is

awarded $1,071,981.00 in attorney's fees, and $13,585.00 in costs, for a total award of

$1,085,566.00. Plaintiff solely is responsible for attorney's fees in the amount of $168,944.21,

while both Plaintiff and the Firm are jointly and severally liable for the remaining attorney's fees

in the amount of $903,036.79.

SO ORDERED.

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 23, 2024
       Brooklyn, New York

12


SpA12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
REPLY ALL CORP.,                :

           Plaintiff,           :

                                :

          v.                    :     **MEMORANDUM & ORDER**

                                :     15-CV-4950 (WFK) (PK)

GIMLET MEDIA, INC.,          :

                                :

          Defendant.        :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 25, 2024, Magistrate Judge Peggy Kuo issued a decision awarding Gimlet Media, Inc. ("Defendant") attorney's fees and costs from Reply All Corp. ("Plaintiff") and Plaintiff's counsel, Balestriere PLLC (d/b/a Balestriere Fariello) ("the Firm"). ECF No. 232. On May 23, 2024, the Court affirmed and adopted Judge Kuo's decision in its entirety. ECF No. 240. On June 6, 2024, the Firm timely filed a motion asking this Court to reconsider its decision. ECF Nos. 243, 244. For the reasons stated below, the Firm's motion for reconsideration is DENIED.

## BACKGROUND

The Court assumes the parties' familiarity with the underlying facts of this action. *See* ECF No. 240 at 1-2.

The Firm filed a letter on June 4, 2024 requesting permission to file a motion for reconsideration of the Court's May 23, 2024 Memorandum and Order, which held:  (1) Defendant is awarded $1,071,981.00 in attorney's fees, and $13,585.00 in costs, for a total award of $1,085,566.00; and (2) Plaintiff solely is responsible for attorney's fees in the amount of $168,944.21, while both Plaintiff and the Firm are jointly and severally liable for the remaining attorney's fees in the amount of $903,036.79. ECF No. 241.  That same day, the Court granted the Firm's request to file a motion for reconsideration and set a briefing schedule. ECF No. 242. The Firm timely filed its motion for reconsideration and accompanying memorandum of law pursuant to Local Civil Rule 6.3.  Balestriere Fariello's Notice of Mot. for Recons. and Mem. of

1

Law in Support of its Mot. for Recons. ("Mem.") ECF Nos. 243, 244.[1] Plaintiff and Defendant filed separate opposition briefs on June 13, 2024. Reply All's Opp'n to Mot. for Recons. ("Pl. Opp'n"), ECF Nos. 245, 247, 248;[2] Gimlet's Response to Mot. for Recons. ("Def. Opp'n"), ECF No. 246. The Firm filed its reply brief on June 20, 2024. Balestriere Fariello's Reply in Further Support of Mot. for Recons. ("Reply Mem."), ECF Nos. 249, 250.[3]

## <u>DISCUSSION</u>

### I.   Legal Standard

"[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). In this district, motions to reconsider are made under Local Civil Rule 6.3. *See* Local Civil Rule 6.3. The Second Circuit has made clear, "[t]he standard for granting [a motion to reconsider] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. "[A] motion for reconsideration is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple[.]'" *Media Glow Digit., LLC v. Panasonic Corp. of N. Am.*, 16 Civ. 7907, 2019 WL 2281375, at *1 (S.D.N.Y. May 29, 2019) (Keenan, J.) (quoting *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted)); *see also Stone*

---

[1] The Firm filed a motion for leave to electronically file its motion for reconsideration under seal, ECF No. 243, which the Court granted, Minute Entry on June 6, 2024. The Firm filed its motion and accompanying memorandum of law under seal at ECF No. 244.
[2] Plaintiff filed a motion for leave to electronically file its opposition brief under seal, ECF No. 245, which the Court granted, Minute Entry on June 13, 2024. Plaintiff filed a sealed, unredacted version of its brief at ECF No. 247 and an unsealed, redacted version at ECF No. 248.
[3] The Firm filed a motion for leave to electronically file its reply brief under seal, ECF No. 249, which the Court granted, Minute Entry on June 20, 2024. The Firm filed its reply brief under seal at ECF No. 250.

SpA14

*v. Theatrical Inv. Corp.*, 80 F. Supp. 3d 505, 506 (S.D.N.Y. 2015) (Engelmayer, J.) (stating that

a motion for reconsideration "is neither an occasion for repeating old arguments previously

rejected nor an opportunity for making new arguments that could have been previously

advanced." (quoting *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y.

2005) (Rakoff, J.)).  Instead, "reconsideration is appropriate only when the moving party

identifies an intervening change of controlling law, the availability of new evidence, or the need

to correct a clear error or prevent manifest injustice." *Stone*, 80 F. Supp. 3d at 506 (cleaned up).

The decision whether to grant or deny a motion for reconsideration lies squarely within the

discretion of the district court. *See Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 132

(2d Cir. 1999).

## II.   Analysis

The Firm moves for reconsideration of the Court's decision on May 23, 2024 based on

two alleged issues:  (1) a lack of cooperation between the Firm and Plaintiff; and (2) Plaintiff's

"functionally defunct" status. Mem. at 4.  The Court finds neither alleged issue warrants

reconsideration of its decision.

### A. Alleged Lack of Cooperation Between the Firm and Plaintiff

The Firm argues "[r]econsideration is warranted because the Firm's ability to pay is a

relevant consideration and the undisputed record evidence shows that there will not be a

constructive discussion between the Firm and [Plaintiff] (which pursuant to its engagement letter

is supposed to indemnify the Firm) regarding apportionment." *Id.* at 6.  Specifically, the Firm

states the Firm and Plaintiff "have not worked together" and "have been only at odds" since the

Court's initial order granting attorney's fees on April 5, 2021. *Id.*

3

SpA15

The Court agrees with Defendant that "the Court was well aware that the Firm and

[Plaintiff] are not cooperating" when the Court affirmed and adopted Judge Kuo's decision. Def.

Opp'n at 2 (internal quotation marks omitted).  In fact, in describing the lack of cooperation in its

motion for reconsideration, the Firm cites to the record *that was before the Court and Judge Kuo*.

For example, the Firm:  (1) quotes from Plaintiff's September 10, 2021 response to Defendant's

memorandum of law in support of attorney's fees; (2) cites to the Firm's April 8, 2024 objection

to Judge Kuo's decision on attorney's fees; and (3) quotes from Plaintiff's April 22, 2024

memorandum of law in opposition to the Firm's objection.  Mem. at 7.  Additionally, when

referencing "contrasting statements about the settlement discussions," the Firm cites to a

declaration Plaintiff included in its response brief dated September 10, 2021.  *Id.*

The Court is keenly aware of the friction between the Firm and Plaintiff because, as the

Firm's references show, the parties previously raised these disagreements.  In its May 23, 2024

decision, the Court agreed with Judge Kuo's description of "the extensive finger-pointing and

mutual accusations" between the Firm and Plaintiff.  ECF No. 240 at 6 (quoting ECF No. 232 at

13).  The high volume of recriminations was a significant factor in the Court's decision to adopt

Judge Kuo's finding of joint and several liability between the Firm and Plaintiff.  The Firm's

statement that "[Plaintiff] and the Firm have argued that the other party bears all responsibility

for any sanction" is not new or overlooked information.  Mem. at 7.  Judge Kuo and this Court

have been aware of the lack of cooperation between the Firm and Plaintiff for several years now,

and it does not "alter the conclusion reached by" the Court in awarding attorney's fees.  *Shrader*,

70 F.3d at 257.

SpA16

**B.  Plaintiff's Allegedly Defunct Status**

After claiming with certainty that "[Plaintiff] will not come to any agreement with the Firm regarding" payment of the attorney's fees award, the Firm argues "[t]he Court respectfully overlooked that, in the unlikely case [Plaintiff] completely changes its position and will work with the Firm to pay" the award, "all record evidence points to [Plaintiff] having no assets that it could contribute to any sanctions payment." Mem. at 8.  Citing to the record before Judge Kuo, the Firm notes Plaintiff was "winding down," "would likely be closing," and had "begun the process of retaining bankruptcy counsel" as support for the assumption that Plaintiff is a "[d]efunct [c]ompany" and "not able to pay any sanction." Mem. at  8-9.  This means, according to the Firm, "Spotify will only be able to seek relief from the Firm, seriously undermining the Firm's ability to continue to represent its clients." Mem. at  9.

Defendant argues the Firm raised the same argument in its objection to Judge Kuo's decision when the Firm requested a reduction in its liability because of its inability to pay the full award. Def. Opp'n at 3 (citing the Firm's objections at ECF No. 233 at 19).  Defendant is correct.  The Court was aware of and noted the Firm's "financial position" in its May 23, 2024 decision. ECF No. 240 at 7.  The Court rejects the Firm's attempt to use its motion for reconsideration as "a vehicle for relitigating old issues . . . or otherwise taking a second bite at the apple." *Media Glow Digit., LLC*, 2019 WL 2281375, at *1 (quoting *Analytical Survs., Inc.*, 684 F.3d at 52) (internal quotation marks omitted).

On reply, the Firm argues the Court previously addressed only the Firm's ability to pay and "not at all [Plaintiff's] *inability* to pay." Reply Mem. at 7.  To the extent the Firm is raising a new argument regarding Plaintiff's operating status, the Firm could have done so previously. *See Associated Press*, 395 F. Supp. 2d at 19 ("[T]he Department's motion simply rehashes three

5

SpA17

arguments previously rejected and adds a fourth, new argument that, having not been previously advanced, has now been waived."). In its motion for reconsideration, the Firm argues Plaintiff is defunct by citing only to prior briefing in this case. Mem. at 8 (citing Plaintiff's declarations filed on September 10, 2021). Plaintiff correctly argues the Firm "did not raise any issues related to [Plaintiff's] operating status or financial condition at any previous point, and cannot do so now" by relying on information available to it years ago. Pl. Opp'n at 4 (citing *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 315 (S.D.N.Y. 2013) (Engelmayer, J.) ("[A] party is barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so.") (internal citation and quotation marks omitted)).

## CONCLUSION

Based on the foregoing reasons, the Court DENIES the Firm's motion for reconsideration and request for oral argument. Mem., ECF No. 244. The Court also DENIES Defendant's motion for additional attorney's fees raised in its opposition brief to the Firm's motion for reconsideration. Def. Opp'n at 3.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: July 29, 2024
      Brooklyn, New York

SpA18

15 U.S.C. § 1117 - U.S. Code - Unannotated Title 15. Commerce and Trade § 1117. Recovery for violation of rights
Current as of January 01, 2024 | Updated by FindLaw Staff

(a)Profits; damages and costs; attorney fees

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

(b)Treble damages for use of counterfeit mark

In assessing damages under subsection (a) for any violation of section 1114(1)(a) of this title or section 220506 of Title 36, in a case involving use of a counterfeit mark or designation (as defined in section 1116(d) of this title), the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of--

(1) intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services; or

(2) providing goods or services necessary to the commission of a violation specified in paragraph (1), with the intent that the recipient of the goods or services would put the goods or services to use in committing the violation.

In such a case, the court may award prejudgment interest on such amount at an annual interest rate established under section 6621(a)(2) of Title 26, beginning on the date of the service of the claimant's pleadings setting forth the claim for such entry of judgment and ending on the date such entry is made, or for such shorter time as the court considers appropriate.

(c)Statutory damages for use of counterfeit marks

In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

(d)section 1125(d)(1)

In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

(e)Rebuttable presumption of willful violation

In the case of a violation referred to in this section, it shall be a rebuttable presumption that the violation is willful for purposes of determining relief if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the violation. Nothing in this subsection limits what may be considered a willful violation under this section.

§1125. False designations of origin and false descriptions forbidden

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

(2) As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

(b) Importation

Any goods marked or labeled in contravention of the provisions of this section shall not be imported into the United States or admitted to entry at any customhouse of the United States. The owner, importer, or consignee of goods refused entry at any customhouse under this section may have any recourse by protest or appeal that is given under the customs revenue laws or may have the remedy given by this chapter in cases involving goods refused entry or seized.